NATIONAL SEWING-MACH. CO. v. WILLCOX & GIBBS SEWING-MACH. CO.

(Circuit Court of Appeals, Third Circuit.   May 13, 1896.)

**PATENTS—CONTRACT OF LICENSE—ROYALTIES.**

Defendant sewing machine company contracted to pay complainant company a royalty of 40 per cent. on the amount of its receipts from sales or leases of machines covered by complainant's patents.   The contract, however, contained a proviso that if defendant "shall sell or lease, or cause to be sold or leased," in any foreign country, the machines at less rates than those in this country, "then the royalty rate to be paid * * * shall be 40 per cent. in lieu of 45 per cent., as hereinbefore provided." After operating several years in the home market, defendant began selling and leasing in foreign countries at a less rate, and offered to pay 40 per cent. on all machines thereafter sold or leased.   Plaintiff claimed that the proviso was retroactive, giving it a right, on the happening of the event, to 45 per cent. of all previous sales and leases, from the commencement of the contract. *Held*, that the contract was merely prospective, so as to require payment of 45 per cent. on all sales and leases both at home and abroad, after the commencement of sales, etc., at a less rate abroad.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Frank P. Prichard and John G. Johnson, for plaintiff in error.
A. H. Wintersteen and George Tucker Bispham, for defendant
in error.

Before ACHESON, Circuit Judge, and WALES and GREEN,
District Judges.

GREEN, District Judge.   This was an action brought by the
plaintiff in error, the National Sewing-Machine Company, against
the Willcox & Gibbs Sewing-Machine Company, the defendant, to
recover the sum of $27,000 or thereabouts, which, it was alleged,
had become due upon a certain contract executed by the respective
parties, bearing date January 8, 1884, fixing and regulating the
payment to the plaintiff of certain royalties or rentals, dependent
upon and arising from the sale or lease by the defendant of a
class or pattern of sewing machines which was protected by letters
patent of the United States, owned by the plaintiff.   By this con-
tract, it was chiefly agreed by the defendant to pay to the plain-
tiff, by way of royalty, a sum equal to 40 per cent. of the receipts
arising from the sales or leases of the sewing machines in ques-
tion.   So far as this part of the contract is concerned, there ap-
pears to have been no default in a strict compliance with its cove-
nant by the defendant company.   But, among other things, the
contract contained a proviso which is in these words:

"And provided, further, and it is hereby distinctly understood and agreed,
that if the said parties of the second part shall sell or lease, or cause to be
sold or leased, for use, or shall cause to be used, in any foreign country,
any trimming and overseaming machines at rates of royalty or rental less
than those charged for the use of like machines in this country, *then the roy-
alty rate to be paid by said parties of the second part to said parties of the first
part shall be forty-five per cent., in lieu of forty per cent., as hereinabove pro-
vided.*"

And it is this proviso which has given rise to the controversy
between these parties; for it appears from the record that in 1894
the defendant company determined to seek a market for the sewing
machines in question in foreign countries, and, for reasons which
were to it satisfactory, began to sell and to lease them at a rate
or rental lower than it charged in the home market.   This was
not done in any secret or underhand manner, but as a matter of
right.   The defendant promptly made known to the plaintiff what
it was doing in this respect; and because it had in this way en-
tered a foreign market, and because it was there selling and leas-
ing sewing machines at a rate lower than in the home market, it
offered to account to the plaintiff for royalties at the increased
rate of 45 per cent., as was stipulated in the proviso, quoted.   This
proposal was not satisfactory, however, to the plaintiff, nor in ac-
cord with its construction of the contract; the insistment of the
plaintiff being that the proviso clause which measured the rate
of royalty in the happening of the contingency stated was retro-
active in its effect; that it was intended to, and did, operate from
the very commencement of the agreement of which it was part if
the circumstances arose which gave it operative effect; and that

the defendant was indebted to it for the difference between 40 per cent. and 45 per cent. royalty upon every sale or lease made by the defendant since the contract was entered into.

This controversy centered about the "then" as used in the proviso. By the plaintiff it was contended that the word "then" was merely a conjunction, in connection with the contingency before stated, signifying "in that case," and as it was thus clearly a word of condition, and not an adverb of time, it followed that the increased royalty provided for upon the happening of the contingency was necessarily operative from the very beginning of the contractual relation between the defendant and itself. On the other hand, the insistment of the defendant was that, as used in this contract, "then" was an adverb of time, bearing the meaning of "at that time," and that its office in the proviso was simply to fix and declare the period when the change of the rate of royalty from 40 per cent. to 45 per cent. of the receipts should take place, to wit, on the occurrence of the event stated. The court below adopted this view, and directed a verdict for the defendant, and this is the alleged error in the proceedings which is relied upon.

It is not strange that such diversity of opinion as to the proper signification of the word "then" should arise. The word in fact will bear two meanings, as its use shows it to be either a conjunction or an adverb. Which is the meaning which should the more properly and certainly be adopted depends very often upon the circumstances which led to its use, very often upon the context of the writing in which it appears and forms a part; and it is entirely allowable for the court to resort to either or both for assistance in arriving at a just conclusion. Doubtless, it was with this idea that considerable testimony was taken concerning the preliminary negotiations which eventuated in the preparation and execution of this contract. But, after all, in this case it does not throw much, if any, light upon the proper signification of this word, as used. The testimony is contradictory, irreconcilable, and affords no safe criterion by which to judge of the motive or object of the contracting parties. Perhaps the writing itself is the safer source of legitimate aid, and to that resort must be had. Critically examining, then, this clause of the contract, and bearing in mind the evident purpose of the whole contract itself, it seems that the construction adopted by the court below is far more reasonable than that for which the plaintiff so strenuously contends; for, in the first place, it will be noted that the parties evidently were dealing with things or acts which were to occur or to be done in the future alone. The language is, "If the parties of the second part shall sell or lease, or [shall] cause to be sold or leased for use, or shall cause to be used in any foreign country," the machines in question, "then the royalty to be paid shall be forty-five per cent., in lieu of forty per cent., as hereinbefore provided." The word "shall," repeated as it is, and the phrase "to be paid," seem pregnant with signification. They relate necessarily to an event which will occur in the future, not to a past transaction. The words "shall be" suggest the meaning "from thence on." They point to

a something which before had no existence. They mark the division between the "now" and the "hereafter." To paraphrase the clause makes the reading practically this: "Now, for the present, and while the present circumstances continue, the royalty is fixed at forty per cent.; but, if a foreign market be entered, the royalty thereafter shall be forty-five per cent." Clearly, this would deny any retroactive effect to the proposed change in the royalty.

Again, the rule of construction which requires meaning to be given to all words in a written instrument which are not purely superfluous compels the consideration of the phrase "in lieu of." The entire clause in which these words appear is: "Then the royalty rate to be paid by the said parties of the second part to the said parties of the first part shall be forty-five per cent., in lieu of forty per cent." What does this phrase mean as commonly used? "In lieu of" means "instead" of, "in place of," "in substitution for." But, unless a rate of royalty has been regarded as fixed and definite, there can be no "substitution" for it of another rate; no putting of another rate "in the place" of one which, if the plaintiff's view be correct, never existed as settled. An increase or decrease of rate of royalty is not "substitution." The very phrase "in lieu of," or its equivalent, "in substitution for," indicates the prior existence of another definite rate, which thenceforth is no longer to exist, because the circumstances which gave it existence themselves no longer exist. If the plaintiff's contention be sound, there never was a fixed and definite rate of royalty established by this contract, but only a rate liable at any moment to be changed ab initio, by the happening of a contingency in the future. This is not in harmony either with the spirit or scope of the contract.

Nor does a construction seem warranted which would result in regarding the new rate in the light of a penalty, to be exacted as for a breach of contract. It would be a very strained construction of this contract to read it as an attempt on the part of the plaintiff to prohibit sales of its sewing machines in foreign markets. The previous agreement between the parties of 1881 had no such restrictive purpose; and the agreement of 1884 not only did not prohibit or restrict, but seems positively to have contemplated, foreign sales, by reserving to the plaintiff a higher rate of royalty when such sales were made. Clearly, the contract was framed to deal with sales both at home and abroad, and provided a rate or royalty suitable under either. Viewing the contract in this way, the word "then" must be taken to be an adverb of time, and held to refer solely to the date of foreign sales.

There was no error in the direction to the jury of the learned judge who tried the cause below, and the judgment is affirmed.