(118 So. 30)

No. 27384.

STATE ex rel. SAINT, Atty. Gen., et al. v. MAYOR AND COMMISSION COUNCIL OF NEW ORLEANS.

July 2, 1928.

Bertrand I. Cahn, City Atty., of New Orleans, for appellant.

Percy Saint, Atty. Gen., and Michael M. Irwin and E. R. Schowalter, Asst. Attys. Gen., for appellees.

BRUNOT, J. This is a mandamus suit. It was instituted by the Attorney General and the president of the Louisiana state board of health. The prayer is for an alternative writ of mandamus commanding the commission council of the city of New Orleans to provide properly equipped and· constructed sanitary markets in lieu of the sixteen markets now owned and operated by said city and known as Dryades, Ewing, French, Guillotte, Lautenschlager, Le Breton, Magazine, Mehle, Memory, Ninth, Poydras, Second, St. Roch, Suburban, Treme, and Claiborne.

The city of New Orleans excepted to the petition as not disclosing a right or cause of action, and further excepted upon the ground that necessary parties to the suit were not joined therein, and, at the same time, with a reservation of the benefits of its exceptions, answered the suit. The answer puts at issue the authority or jurisdiction of the state board of health over the markets of New Orleans, and the said board's right or authority to determine the structural fitness or unfitness of buildings for market purposes. The duty of the city to maintain sanitary markets is admitted, but it is averred that, where

a municipal board of health has been organized under the provisions of Act 79, Extra Sess. of 1921, all of the powers regulating the sanitation of public markets in the municipality are delegated to said board. Respondent denies that the public markets named in the petition are unsanitary and unfit for use as such, and avers that its general fund has been budgeted; that there are no available funds to presently comply with the demands of relators; that to do so would impair the obligations of respondent; and that, if relators have rights in the premises, they are not entitled to a writ of mandamus because they have other adequate, legal remedies at law.

The case was tried, and the alternative writ of mandamus prayed for was made peremptory. The appeal is from that judgment. For reasons which will hereinafter appear, we quote the judgment, omitting the names of the sixteen markets affected by it:

"For the written reasons on file herein, it is ordered, adjudged, and decreed that the alternative writ of mandamus herein prayed for be made peremptory, and accordingly that the mayor and commission council of the city of New Orleans be ordered to provide properly equipped and constructed sanitary public markets *in lieu* of the following enumerated public markets," etc. (Underscoring ours.)

The wording of the judgment does not leave the city any alternative. It directs the mayor and commission council to construct and properly equip sanitary public markets to take the place of the markets named in the judgment. 4 Words and Phrases, p. 3476, defines the words "in lieu of" as follows:

" 'In lieu of' means instead of; in place of; in substitution for."

The quoted definition has been applied in a number of cases, one of which is National Sewing Mach. Co. v. Wilcox & Gibbs Sewing Mach. Co., 74 F. 557, 559, 20 C. C. A. 654.

On the trial of the case, two witnesses testified for relators, viz. Dr. Dowling, the president of the state board of health, and one of the board's inspectors. After testifying to the condition of particular markets, the substance of Dr. Dowling's testimony is that all of the markets named in the petition would be satisfactory, if they met the following requirements: A proper disposal of waste, the installation of running water, repairs to certain floors, repairing certain leaks in roofs; screening certain openings, cleaning toilets in some of the markets and installing toilets in others; and providing facilities for washing the hands of visitors and employees. The doctor expressed the opinion that in some instances it might be more economical to rebuild the market than to repair it, but he does not specify any particular building where such a condition exists as warrants its demolition and reconstruction. The doctor's grounds of complaint are fairly summarized in the following question and answer thereto:

"Q. Tell us like a layman would understand it, how the unsanitary condition of those markets would cause an epidemic or plague?

"A. Well, take the present condition of the market garbage. It is not properly protected and cared for. It is nothing unusual to see garbage scattered around in the gutters adjacent to the markets and even on the floors in the markets. I have seen that in the French Market, where rats or cats come there and play havoc with meats in the early morning hours. Rats are carriers of bubonic plague. Cats and dogs, which also frequent the markets, are carriers of different forms of disease. Flies have easy access to within the markets, and they carry different diseases. They might light on the sputum on the floor of a tubercular, and when they walk over the food, they naturally carry the tubercular on their feet. Flies also carry scarlet fever and diphtheria and possibly a number of other diseases that could be enumerated. Dogs and cats carry fleas, and they might be the means of having fleas which are infected with bubonic plague, though they are usually found on the rat. I have seen in the French Market the heads of chickens being removed without any means of cleaning the chicken except an ordinary bucket of water, and then those chickens are exposed in the market, where flies go over them and the dust settles on them. I have seen milk being dipped in the markets,

which is a violation of law. They carry cream cheese and butter open to the flies and the dust."

 The law provides ample means, other than by mandamus, for correcting and preventing a recurrence of the conditions complained of by the relators. An injunction restraining the commission council from operating unsafe or unsanitary markets is an expeditious, effective, and proper procedure. It is a well-recognized rule that mandamus will not lie if there be other adequate legal remedy open to relators for the enforcement of his demands. Wood on Mandamus, p. 16; High's Extraordinary Remedies, p. 19; State v. New Orleans & C. R. Co., 37 La. Ann. 589; State v. Sommerville, 111 La. 1015, 36 So. 104; State v. Acme Lumber Co., 115 La. 893, 40 So. 301; State v. Whitaker, 116 La. 947, 41 So. 218.

The case of State v. Acme Lumber Co. emphasizes the rule that mandamus will not issue in cases of doubtful right.

In this case the respondent might well admit that the state board of health, under the Constitution of 1921 (article 6, § 11) and the jurisprudence of this state, has plenary power to enforce sanitary regulations in publicly operated city markets without injury to its cause, for the power of the board to regulate the use of the city markets does not include the power to control the discretion of the commission council to repair, or to discontinue the use of, or to demolish and rebuild, its markets. In the case of State ex rel. T., S. & N. R. Co. v. Smith, 104 La. 370, 29 So. 40, this court said:

"A writ of mandamus will not lie unless the action desired is an absolute obligation on the part of the person sought to be coerced, and the relator must show not only a clear legal right to have the thing done, but to have it done in the manner and form in which he desires the respondent to perform it."

It seems clear to us that, while the state board of health has the power to re-

strain, by injunction, the use of any market, whether publicly or privately owned and operated, until its sanitary code is complied with, it has no power to control, by mandamus, the discretion of the commission council with respect to its disposition of municipally owned property.

It is clear that relator has mistaken his remedy, and therefore the judgment making the preliminary writ of mandamus peremptory must be set aside.

This conclusion disposes of the case, and no other issue, including that of the extent of the powers delegated to municipal boards of health, organized under the provisions of Act 79, Extra Sess. of 1921, need be considered.

For the reasons stated, it is decreed that the judgment appealed from be, and it is hereby, avoided and reversed, and relators' application for mandamus is denied.