22 So.3d 921 (2009)
HARRAH'S BOSSIER CITY INVESTMENT COMPANY, L.L.C.
v.
Cynthia BRIDGES, in her Capacity as the Secretary of the Department of Revenue and the Louisiana Department of Revenue.
Cynthia Bridges, Secretary of the Department of Revenue for the State of Louisiana
v.
Wilhite Electric Company, Inc.
Nos. 2008 CA 1727, 2008 CA 1728, 2008 CA 1729, 2008 CA 1730, 2008 CA 1731, 2008 CA 1732, 2008 CA 1733, 2008 CA 1734, 2008 CA 1735, 2008 CA 1736, 2008 CA 1737, 2008 CA 1738, 2008 CA 1739, 2008 CA 1740, 2008 CA 1741, 2008 CA 1742, 2008 CA 1743, 2008 CA 1744, 2008 CA 1745, 2008 CA 1746, 2008 CA 1747, 2008 CA 1748, 2008 CA 1749, 2008 CA 1750, 2008 CA 1751, 2008 CA 1752, 2008 CA 1753, 2008 CA 1754, 2008 CA 1755, 2008 CA 1756, 2008 CA 1757, 2008 CA 1758.
Court of Appeal of Louisiana, First Circuit.
July 27, 2009.
Writ Denied November 25, 2009.
*924 Linda S. Akchin, Christopher J. Dicharry, Jenny N. Phillips, Baton Rouge, LA, for Plaintiff/Appellant, Harrah's Bossier City Investment Company, L.L.C.
Robert R. Rainer, Drew M. Talbot, Baton Rouge, LA, for Defendants/Appellees, Cynthia Bridges and Louisiana Dept. of Revenue.
Brian A. Cowan, Malcolm S. Murchison, Shreveport, LA and David F. Waguespack, New Orleans, LA, for Amicus Curiae Churchill Downs Louisiana Horseracing Company, L.L.C. d/b/a Fair Grounds Race Course.
Before GUIDRY, PETTIGREW, McDONALD, HUGHES, and WELCH, JJ.
HUGHES, J.
This is an appeal from a summary judgment ruling that a corporate taxpayer was liable for sales and use taxes for purchases related to its horse racing/offtrack betting/slot machine casino facility, dismissing the taxpayer's claim for refund of taxes paid under protest, and holding that the taxpayer's statutory basis for an alternate taxing regime was an "exemption" that had been suspended by LSA-R.S. 47:302(Q) and (R). For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On October 17, 2005, Harrah's Bossier City Investment Company, L.L.C ("Harrah's") filed the first of thirty-one lawsuits (subsequently consolidated for trial) against Cynthia Bridges, in her capacity as the Secretary of the Louisiana Department of Revenue, and the Louisiana Department of Revenue (referred to herein collectively as "LDR"), seeking the refund of sales and use taxes paid under protest.[1] Harrah's alleged that during the course of making improvements to add a slot machine casino to its horse racing/offtrack betting facility in Bossier City, considerable purchases were made of building materials, fixtures, flooring, appliances, artwork, computer systems, heating and air conditioning systems, security systems, gaming devices, and other operating equipment. During an audit[2] by LDR, it was determined that Harrah's had paid no sales and use tax on the purchase, lease, and/or rental of this property and demand was made upon Harrah's for the payment of these allegedly *925 delinquent taxes. Despite Harrah's contention that, pursuant to LSA-R.S. 4:168, purchases related to its facility were not subject to sales and/or use taxes, it was compelled to pay these taxes under protest.[3]
In response to these consolidated suits, LDR filed an answer on June 6, 2006, denying the allegations, and on October 20, 2007, filed a reconventional demand asserting the validity of the taxes collected[4] and requesting judgment against Harrah's "in the total sum of $3,222,394.72 being the total amount of taxes and interest paid under protest by Harrah's as of the date of the filing of [the] reconventional demand, together with any additional amounts paid under protest [thereafter]." LDR further represented in reconvention that litigating the suits necessitated the hiring of private counsel, entitling it to an award of attorney fees pursuant to LSA-R.S. 47:1512. LDR filed an amended reconventional demand on November 2, 2007, stating:
Since Harrah's was not entitled to the exemption provided by [LSA-]R.S. 4:168, title to construction materials did not pass tax free from the various vendors to Harrah's at the time of purchase by the General Contractor and the eighty-plus subcontractors. If title to the said construction materials did pass to Harrah's, the agency relationship created by the language of the exemption certificates was effective solely for purposes of sale and transfer of title, but not for purposes of tax exemption, and such purchases were fully taxable to Harrah's and were not exempt from tax pursuant to [LSA-]R.S. 4:168.
LDR also filed a motion for partial summary judgment seeking a ruling by the trial court that LSA-R.S. 4:168 had been suspended during the audit period by LSA-R.S. 47:302(Q) and (R).
On November 15, 2007 Harrah's filed an exception of no cause of action as to LDR's reconventional demand, asserting that because the taxes for which LDR sought judgment had actually been paid, albeit under protest, LDR failed to state a valid cause of action for judgment in the amount of the paid taxes or for statutory attorney fees thereon. Further, Harrah's filed a cross motion for summary judgment on November 21, 2007 asserting that, as a pari-mutuel horse racing facility and an offtrack wagering facility, it was entitled to exclusion from sales and use tax as provided by LSA-R.S. 4:168 and 4:227.
Harrah's also filed a supplemental and amending petition on November 26, 2007 asserting detrimental reliance and stating that LDR had previously taken the position and published a Tax Exemption Budget each year for fiscal years 1996/1997 through 2006/2007 in which it was acknowledged that LSA-R.S. 4:168 and 4:227 "remove[d] the liability for sales tax in lieu of *926 the special taxes imposed on" licensed race tracks and licensed offtrack wagering facilities.
A supplemental and amended reconventional demand was filed by LDR on November 28, 2007 seeking the recovery of additional taxes allegedly owed by Harrah's on taxable transactions for which no tax had been paid (the additional taxes allegedly owed were $1,052,420.13 including interest amounting to $659,118.10), re-asserting that LSA-R.S. 4:168 and 4:227 had been suspended by the legislature during the audit period making the transactions at issue taxable, and re-urging its entitlement to statutory attorney fees.
On February 29, 2008 Harrah's filed an answer to LDR's reconventional demand, amended reconventional demand, and supplemental and amended reconventional demand, maintaining in essence that sales and use taxes were not owed on the transactions at issue on account of LSA-R.S. 4:168 and 4:227, that these statutes were not suspended, and that the statutes applied to the purchase, lease, procurement, etc. of goods and/or services by its contractor and subcontractors, acting as agents on its behalf.
On February 29, 2008 Harrah's also filed a peremptory exception of prescription as to LDR's reconventional demand, amended reconventional demand, and supplemental and amended reconventional demand, citing LSA-C.C.P. art. 1067 and the fact that LDR's reconventional demand pleadings were filed more than ninety days after the main demand.
A judgment was signed by the trial court on June 12, 2008, which: overruled Harrah's peremptory exception of prescription, ruled that LSA-R.S. 4:168 and 4:227 were sales tax "exemptions" that were suspended during the audit period by the Legislature pursuant to LSA-R.S. 47:302(Q) and (R), granted partial summary judgment in favor of LDR and dismissed Harrah's petitions in all of the consolidated cases, and reserved to LDR the claims asserted in reconvention. The judgment further stated that Harrah's motion for partial summary judgment was not reached by the court, and that the court did not consider Harrah's claims asserted in its first supplemental and amending petition. The judgment was certified as a final, appealable judgment pursuant to LSA-C.C.P. art. 1915(B), the court finding no just reason for delay because of "economic reasons and time constraints."
Harrah's has appealed and specifies the following assignments of error:
(1) The trial court erred in granting LDR's motion for summary judgment because: (i) LDR's affirmative defense of "legislative suspension" of sales tax exemptions had not been pled in its answer and was waived; (ii) LSA-R.S. 4:168 and 4:227 created "exclusions" from sales tax, not sales tax "exemptions"; (iii) the so-called legislative suspension of sales tax exemptions applied only to 2% of the 4% state sales tax;[5] and (iv) LDR failed to establish equal and uniform application of the legislative suspension of sales tax exemption statutes to pari-mutuel and offtrack wagering facilities.
(2) The trial court erred in overruling Harrah's exception of prescription as to LDR's amended reconventional demand for additional taxes as the purchases at *927 issue were for the racetrack area of its facility, and were not the subject of the LDR audit that provoked the tax payments made under protest (related to the slot machine gaming and common areas of the facility) or the lawsuits for refund of those payments.
(3) The trial court erred in failing to "recognize" that partial summary judgment was "premature" as to LDR's reconventional demand, as amended and supplemented, and to "clearly and unequivocally" state in judgment that the demands made therein (as well as the defenses raised thereto) are "expressly reserved to both parties" and are not part of the judgment.
(4) The trial court erred in failing to address Harrah's cross motion for summary judgment.
(5) The trial court erred in "failing to clearly and unequivocally" state in judgment that all of Harrah's claims raised in its amended and supplemental petition related to detrimental reliance (as well as LDR's defenses thereto) are "expressly reserved to both parties" and are not part of the judgment.

LAW AND ANALYSIS

Motion for Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Samaha v. Rau, XXXX-XXXX, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La.4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La.6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id., XXXX-XXXX at p. 1, 876 So.2d at 765-66.
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and *928 summary judgment will be granted. LSA-C.C.P. art. 966(C)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). See also Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, XXXX-XXXX, p. 9 (La.App. 1 Cir. 2/8/08), 984 So.2d 72, 79-80; Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, XXXX-XXXX, p. 5 (La.4/23/04), 874 So.2d 131, 137; Dyess v. American National Property and Casualty Company, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 592; Cressionnie v. Intrepid, Inc., XXXX-XXXX at p. 3, 879 So.2d at 738-39.

Applicable Taxing Provisions
The resolution of this dispute turns on the apparent conflict between the state's sales tax statute, LSA-R.S. 47:302, and the taxing statutes applicable to horse racing and offtrack betting facilities. See LSA-R.S. 4:168 and LSA-R.S. 4:227. The sales tax statute provides for the levy of "a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property," "upon the lease or rental within this state of each item or article of tangible personal property," and "upon all sales of services." LSA-R.S. 47:302(A), (B), and (C). Various exemptions to this taxing statute have been enacted both within the statute and elsewhere in the Revised Statutes.
Harrah's contends that the statutory provisions authorizing and governing horse racing and offtrack betting provide "exclusions" from the payment of sales tax to these facilities. In particular, Harrah's relies on LSA-R.S. 4:168,[6] which states:
The license fees, commissions, and taxes imposed in this Part are in lieu of all other such licenses, sales, excise and occupational taxes to the state or to any parish, city, town, or other political subdivision thereof. [Emphasis added.]
and on LSA-R.S. 4:227,[7] which states:
The license fees, commissions, and taxes imposed upon an offtrack wagering facility in this Part are in lieu of all other such licenses, sales, excise, and occupational taxes to the state or to any parish, city, town, municipality, or other political subdivision thereof. [Emphasis added.]
Contrarily, LDR asserts that LSA-R.S. 4:168 and LSA-R.S. 4:227 are "exemptions" from the sales tax imposed by LSA-R.S. 47:302, and that paragraphs (Q) and (R)[8] of LSA-R.S. 47:302 have suspended *929 the effect of these "exemptions" for the tax periods at issue, rendering Harrah's liable for sales tax.
Harrah's draws a distinction between an "exclusion," which it contends is a removal of a class of persons or things from sales tax liability, and an "exemption," which it contends is a transactional release from sales tax liability. Thus, since only "exemptions" are suspended under LSA-R.S. 47:302(Q) and (R), Harrah's maintains that the "exclusions" provided to race tracks and offtrack wagering facilities by LSA-R.S. 4:168 and LSA-R.S. 4:227 are not affected by that suspension.
Harrah's position is demonstrated in its citation of Tarver v. World Ship Supply, Inc., 615 So.2d 423 (La.App. 4 Cir.), writ denied, 616 So.2d 672 (La.1993), in which the issue was whether LSA-R.S. 47:305(E) (providing immunity from sales tax on articles of tangible personal property imported into the state, produced or manufactured in the state for export, and on bona fide interstate commerce) constituted an "exemption" or an "exclusion" from sales tax; the court therein stated:
If this section were construed so as to provide an exemption it could fall within the ambit of the legislation referred to above which suspended all of the exemptions in Chapter 2 for the period from July 1, 1986, through July 31, 1988. However, we construe this section to provide for an exclusion rather than an exemption. The difference can readily be seen by reference to the following from section 3.1 of Louisiana Sales & Use Taxation by Bruce J. Oreck:
Two well established rules of statutory construction come into play when considering exclusions and exemptions. A tax exemption is a provision which exempts from tax a transaction which would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction which is clearly within the ambit and authority of the taxing statutes to tax. On the other hand, an exclusion relates to a transaction which is not taxable because it falls outside the scope of the statute giving rise to a tax, ab initio. Transactions excluded from tax are those which by the language of the statutes are defined as beyond the reach of the tax.
The author goes on to say, citing a wealth of authority, that while exemptions from taxation are strictly construed against the taxpayer, statutes imposing the tax, of which exclusions are *930 an integral part, are construed liberally in favor of the taxpayers and against the taxing authority.
Tarver v. World Ship Supply, Inc., 615 So.2d at 426 (cited with approval by Kerr-McGee Corporation v. McNamara, XXXX-XXXX, pp. 10-11 (La.App. 1 Cir. 6/22/01), 826 So.2d 1, 7).
In contrast, LDR relies on the meaning of "exemption" adopted by this court in State v. Exxon Corporation, 95-2501 (La. App. 1 Cir. 6/28/96), 676 So.2d 783. In State v. Exxon Corporation, this court, in considering whether LSA-R.S. 47:305(D)(l)(h) was an exemption that had been legislatively suspended or whether it constituted a method for valuing refinery gas for tax calculation purposes, stated:
Initially, we note that while not conclusive, it is significant that La. R.S. 47:305(D)(1)(h) is located in a section of Title 47 entitled "Exclusions and exemptions from the tax." However, in deciding whether a provision grants a tax exemption, the words and form used [are] not dispositive; rather it is the effect of the provision which is determinative. "[A]n exemption implies a release from some burden, duty or obligation." Even if the word "exemption" is not expressly used, an exemption is created if the effect of the provision is to grant an immunity from taxation. As stated by the Supreme Court ..., property "relieved from the burden of taxation is exempt."
State v. Exxon Corporation, 95-2501 at pp. 5-6, 676 So.2d at 786-87 (citations omitted).
Although the cited cases exemplify the differing interpretations suggested by the parties as to the taxing provisions at issue, they are not dispositive; no case directly on point has been cited to this court and our research has revealed none.

Statutory Interpretation
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. LSA-C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13. See also LSA-R.S. 1:3-4.
When interpreting a law, the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence, or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless, or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant, or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question that is consistent *931 with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question that harmonizes and reconciles it with other provisions. A construction of a law that creates an inconsistency should be avoided when a reasonable interpretation can be adopted that will not do violence to the plain words of the law and will carry out the intention of the lawmaker. When the expressions of a law are "dubious," the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause that induced the lawmaker to enact it. When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one that renders part thereof ridiculous or nugatory. If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La. App. 1 Cir.1984). See also Ransome v. Ransome, 2001-2361, pp. 5-6 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 752.
After careful consideration of the matter, we find no ambiguity in the language of LSA-R.S. 4:168 and LSA-R.S. 4:227 (Title 4, Chapter 4, "Racing").[9] These statutes clearly state that the license fees, commissions, and taxes imposed on the horse racing and offtrack wagering industry by Title 4, Chapter 4, "Racing" are "in lieu of, which means "instead of",[10] all other such licenses, sales, excise, and occupational taxes to the state or to any parish, city, town, municipality, or other political subdivision. These provisions effectively remove the horse racing and offtrack wagering industry from the application of the general sales tax law (Title 47, Chapter 2, "Sales Tax," LSA-R.S. 47:301 et seq.), including its mandatory taxing provisions as well as its exempting and exclusory provisions, substituting instead an alternate taxing regime (for "licenses, sales, excise, or occupational taxes"), contained wholly within Title 4, Chapter 4, "Racing."[11]
The replacement of Title 47, Chapter 2 taxing provisions with Title 4, Chapter 4 taxing provisions does not "relieve" the race track/offtrack wagering facility taxpayer from a tax burden (the hallmark of an "exemption" as argued by LDR).[12] Because *932 the effect of LSA-R.S. 4:168 and LSA-R.S. 4:227 is to substitute the Title 4 taxing provisions for the Title 47 sales tax provisions for the determination of the tax burden, a tax burden remains and is not done away with or "relieved;" therefore, the application of these provisions cannot be called an "exemption."[13] Nor do we find the term "exclusion" a precise description of these statutes, as other statutory sales tax "exclusions" merely exclude the payment of sales tax without the replacement of an alternate or substitute tax burden. See LSA-R.S. 47:301 (definitional exclusions[14]); LSA-R.S. 47:305(E) (interstate commerce exclusion[15]).
We reject LDR's assertion that the definition of "exemption" "fits this case like a glove" and that "if it looks like a duck, quacks like a duck, and walks like a duck, it is a duck." It is because the taxing scheme at issue in this case does not exactly fit the characteristics of either an "exemption" or an "exclusion" that we must conclude it is something other than either an exemption or an exclusion. The grant of an "exemption" represents a legislative decision not to tax when a transaction would otherwise be taxable. The grant of an "exclusion" sets apart, by legislative definition, a transaction as not taxable because it falls outside the taxing statute. See Tarver v. World Ship Supply, Inc., 615 So.2d at 426. Neither of these concepts precisely fits the circumstances considered herein. There is no sales tax "exclusion" because racing facilities have not been placed outside the scope of taxation by any definitional provision applicable to sales tax law (see LSA-R.S. 47:301-302). Nor is there a sales tax "exemption" because the legislature has not excused racing facilities from taxation, but rather the legislature has substituted one system of taxation (LSA-R.S. 4:161 et seq.) for another (LSA-R.S. 47:302).[16]
*933 We further reject LDR's assertion that the legislative treatment of racing facilities vis-a-vis the imposition of sales tax is "conditional." LDR asserts that if a racing facility cannot prove payment of the fees, commissions, and taxes imposed by LSA-R.S. 4:168 and LSA-R.S. 4:227, "the condition precedent is not satisfied and [the racing facility] must pay taxes on [its] purchase like everybody else." However, the pertinent statutes, LSA-R.S. 4:168 and LSA-R.S. 4:227, do not contain any language making the substitution of the Title 4 taxing statutes for other taxing statutes "conditional," and LDR cites no authority for this assertion. Moreover, other Title 4 provisions are in place to ensure the payment of the fees, commissions, and other deductions imposed therein: a deposit is required by LSA-R.S. 4:161 and 161.2 that is refundable after payment of specified fees, and LSA-R.S. 4:152 and 4:160 authorize the Louisiana Racing Commission to "refuse, suspend, or withdraw" "licenses, permits, and privileges" granted by it for non-compliance with the provisions of LSA-R.S. 4:141 et seq. Presumably, LDR refers to a condition precedent to its own internal requirement that a person applying to it for a sales tax exemption certificate present proof that payment of other governmental fees due have been paid prior to the issuance by LDR of a sales tax exemption certificate. However, the existence of such an administrative procedure does not affect the application of statutory law. Consequently, we hold that LSA-R.S. 4:168 and LSA-R.S. 4:227 have not been suspended by LSA-R.S. 47:302(Q) or (R).[17] Because the trial court erred in ruling in favor of LDR and dismissing Harrah's lawsuits, we reverse the judgment.[18] Further, the trial court failed to reach the motion for summary judgment filed by Harrah's, thus we remand the matter for further proceedings in accordance with the foregoing.

CONCLUSION
For the reasons assigned herein, the summary judgment granted by the trial court in favor of the Louisiana Department of Revenue and Cynthia Bridges, in her capacity as the Secretary of the Louisiana Department of Revenue, is hereby reversed and the matter is remanded for further proceedings; all costs of this appeal, in the amount of $18,026.64, are to be borne by the Louisiana Department of Revenue and Cynthia Bridges, in her capacity as the Secretary of the Louisiana Department of Revenue.
REVERSED AND REMANDED.
GUIDRY, J., concurs in part and dissents in part and assigns reasons.
PETTIGREW, J., concurs.
WELCH, J., concurs without reasons.
McDONALD, J., dissent and assigns reasons.
GUIDRY, J., concurring in part and dissenting in part.
I concur with the result reached by the majority relative to Harrah's being covered *934 by an alternative taxing scheme under La. R.S. 4:168 and La. R.S. 4:227 only as it relates to its pari-mutuel operations. However, I dissent to the extent that the majority extends the application of La. R.S. 4:168 and La. R.S. 4:227 to Harrah's slot machine operations, which were authorized long after the enactment of La. R.S. 4:168 and La. R.S. 4:227 and for which none of the fees, commissions, and taxes provided for in La. R.S. 4:168 and La. R.S. 4:227 are applicable.
McDONALD, J., Dissenting.
The real issue in this case is whether the applicable statutes provide for an exemption or an exclusion. If an exemption, then the taxes are due; if an exclusion, they are not. The majority has concluded that they are exclusions and Harrah's does not owe the tax. I disagree and believe La. R.S. 4:168 and La. R.S. 4:227 provide for an exemption from the taxes. Once these exemptions were suspended by the Legislature pursuant to La. R.S. 47:302(Q) and (R) the taxes became due.
This case has been well briefed and each side's position is well argued. The majority suggests that there are other taxes imposed on Harrah's that are a substitute for the regular licensing, sales, excise, and occupational taxes that would be imposed. Since these license fees, commissions, and taxes are in lieu of the normal taxes, they are a substitute for them and create an alternate taxing regime. Rather than relieve the taxpayer of a tax burden (an exemption), the statutes create a separate taxing scheme which makes it an exclusion.
However, race tracks such as Harrah's paid sales taxes for years beginning in 1948. In 1968 the exemptions were created when La. R.S. 4:168 was enacted. The suspension of these exemptions was created in 1986. Thus, the taxes were paid for the 20 year period from 1948 until 1968, were exempted from 1968 until 1986, and then suspended in 1986. I believe the argument of LDR concerning the meaning of the term "in lieu of is more persuasive. LDR suggests that this term means three things.
First, in 1968 purchases by race track operators would be subject to sales, excise, and occupational license taxes just like everyone else were it not for the action of the legislature in providing the exemption. Such purchases had been subject to such taxes since 1948. However, in 1968 they would not have to pay such taxes any longer because they would be exempt from them and pay the enumerated taxes instead, or "in lieu of them.
Second, since race track operators were to be subject to the "license fees, commissions, and taxes imposed in this Part" they would be exempt from the taxes imposed on those not engaged in the horse race industry. In other words, they would be exempt from these taxes imposed on other businesses.
Third, the exemption was conditional. In order to receive the exemption, the race track had to prove that it had paid those taxes and fees imposed on them. If they could not prove they had paid the taxes, license fees, and commissions specifically imposed on them, then they must pay the sales taxes imposed on everyone else.
The majority quotes the difference between an exclusion and exemption as found in Tarver v. World Ship Supply, Inc., 615 So.2d 423 (La.App. 4 Cir.), writ denied, 616 So.2d 672 (La.1993), quoting Bruce J. Oreck:
Two well established rules of statutory construction come into play when considering exclusions and exemptions. A tax exemption is a provision which exempts from tax a transaction which would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not *935 to tax a certain transaction which is clearly within the ambit and authority of the taxing statutes to tax. On the other hand, an exclusion relates to a transaction which is not taxable because it falls outside the scope of the statute giving rise to a tax, ab initio. Transactions excluded from tax are those which by the language of the statutes are defined as beyond the reach of the tax.
There is no question that sales taxes could be imposed on horse race track purchases. In fact, from 1948 until 1968 these sales taxes were paid by these facilities. In 1968, the legislature made the decision not the tax these purchases by race track operators if they paid other taxes that were imposed. This is the definition of an exemption, not an exclusion. For these reasons, I respectfully dissent.
NOTES
[1] A thirty-second lawsuit was filed by LDR against one of Harrah's electrical contractors in the 26th Judicial District Court, Bossier Parish. LDR alleged in this suit that the defendant contractor failed to pay sales tax on purchases of materials made for use in the performance of the defendant's contract with Harrah's "in the real property construction of Harrah's Louisiana Downs." Harrah's intervened in this suit and filed a cross-claim against LDR asserting that the amount LDR sought to recover was included in an amount previously paid under protest by Harrah's; Harrah's also reiterated issues raised in the other lawsuits. A judgment was rendered by the 26th J.D.C. in January 2008 transferring the matter to the 19th J.D.C. for reasons of forum non conveniens. Thereafter, the transferred case was consolidated for trial with the other thirty-one cases.
[2] The audit period was from January 1, 2003 through December 31, 2005.
[3] The total amount Harrah's seeks to recover from LDR in its thirty-one suits is $3,347,592.61.
[4] In its reconventional demand, LDR alleged:

Harrah's is not entitled to any sales and use tax exemption with respect to the material, supplies and equipment purchased to enable [sic] the General Contractor and the eighty-plus subcontractors for use and consumption in the construction of the new slot machine casino.
....
Harrah's is also not entitled to a tax exemption for the purchases, leases, rentals and uses by it individually with respect to the construction, furnishing, equipping and operating the new slot machine casino.
....
Harrah's is not entitled to a tax exemption for the purchases, leases, rentals and uses by it individually with respect to purchases of articles for the "common areas" of the facility that serve patrons of both the race track and the slot machine casino, such as restrooms and restaurants.
[5] Harrah's points out that LSA-R.S. 47:302 provides for only 2% of the state's 4% sales tax, while the remaining 2% is authorized as follows: LSA-R.S. 47:321, 1%; LSA-R.S. 47:331, 0.97%; and LSA-R.S. 51:1286, 0.03%. Harrah's argues that LSA-R.S. 47:302(Q) and (R) do not apply to LSA-R.S. 47:321, LSA-R.S. 47:331, and LSA-R.S. 51:1286.
[6] Section 168 is contained in Part I, "Horse Racing," of Chapter 4, "Racing," of Title 4, "Amusements and Sports."
[7] Section 227 is contained in Part II, "Offtrack Wagering," of Chapter 4, "Racing," of Title 4, "Amusements and Sports."
[8] Louisiana Revised Statute 47:302 provides in pertinent part:

Q. Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period July 1, 2002 through June 30, 2004, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 39:467 and 468, R.S. 47.305(A)(1), (B), (D)(1)(f), (j), (k), (l), (m), (s), and (t), and (G), 305.1, 305.2, 305.3, 305.8, 305.10, 305.14, 305.15, 305.20, 305.25(A)(1) and (2), 305.37, 305.38, 305.46, and 305.50, and R.S. 51:1787, shall be inapplicable, inoperable, and of no effect.
R. (1) Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period July 1, 2004, through June 30, 2009, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 39:467 and 468, R.S. 47:305(A)(1), (B), (D)(1)(f), (j), (k), (l), (m), (s), and (t), and (G), 305.1, 305.2, 305.3, 305.8, 305.10, 305.14, 305.15, 305.20, 305.25(A)(1) and (2), 305.37, 305.38, 305.46, 305.50, and 305.51, and R.S. 51:1787, shall be inapplicable, inoperable, and of no effect.
(2) Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, the exemption provided for in R.S. 47:305(A)(2) and 305.25(A)(3) shall be applicable, operable, and effective from July 1, 2007.
[Emphasis added.]
[9] We acknowledge the amicus curiae brief filed by Churchill Downs Louisiana Horseracing Company, L.L.C. d/b/a Fair Grounds Race Course, citing the legislative declaration of the public policy interest, as expressed in LSA-R.S. 4:141 and LSA-R.S. 27:352, in promoting the continued economic viability of the horse racing industry, particularly in light of the detrimental impact presented by other legalized wagering facilities, such as the lottery, riverboat gaming, and land-based casino gaming. However, because we find no ambiguity as to the meaning of LSA-R.S. 4:168 and LSA-R.S. 4:227, we find it unnecessary to examine legislative intent.
[10] "In lieu of" means "instead of; in place of; in substitution for." State ex rel. Saint v. City of New Orleans, 166 La. 817, 819, 118 So. 30, 31 (La. 1928). See also State v. Escalade, 150 La. 638, 91 So. 135 (La.1921) (on rehearing) (stating that "`[i]n lieu of ... is taken from the French language, and means `in place of or `instead of'"); and Black's Law Dictionary 791 (7th ed.1999) (defining "in lieu of" as "[i]nstead of or in place of; in exchange or return for").
[11] This holding also applies to Harrah's slot machine casino, opened pursuant to LSA-R.S. 27:351 et seq., the "Louisiana Pari-mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act," which was enacted specifically to authorize slot machine gaming at eligible live horse racing facilities. See LSA-R.S. 27:353. See also LSA-R.S. 33:9561.
[12] The license fees, commissions, and deductions from racing proceeds authorized to be levied by Title 4, Chapter 4, "Racing" are addressed in Sections 161, 161.2, 162, 163.1, 166, 166.1, 166.2, 166.3, 166.5, 166.6, 166.7, 167, 169, 216, and 218.
[13] We are not persuaded by LDR's suggestion that the application of the term "exemption" to LSA-R.S. 4:168 found in Traigle v. Fairgrounds Corp., 288 So.2d 409 (La.App. 4 Cir.), writ refused, 292 So.2d 246 (La. 1974), is dispositive of the issue currently before this court. In Traigle, the tax collector was not claiming sales taxes on items that the defendant race track bought for its own use, but only on those items that were sold on a retail basis to the patrons of the race track. The Fourth Circuit ruled that LSA-R.S. 4:168 did not provide an "exemption" to the defendant race track from a duty to collect sales tax on sales made to its patrons. As to an occupational license tax sought to be collected, the court found LSA-R.S. 4:168 provided an "exemption." The denomination of LSA-R.S. 4:168 as an "exemption" in Traigle was merely dicta since classification of LSA-R.S. 4:168 as an "exemption," an "exclusion," or an "alternate taxing regime" was not an issue in the case; nor were sales tax "exemptions" legislatively suspended at the time the case was rendered.
[14] See Associated Hospital Services, Inc. v. State, Department of Revenue and Taxation, 588 So.2d 356, 358 (La.1991).
[15] Kerr-McGee Corporation v. McNamara, XXXX-XXXX at p. 14, 826 So.2d at 9.
[16] The LDR cites this court to LSA-R.S. 12:425 as an example of another group of taxpayers with a similar taxation scheme as that presented herein in support of their argument that the taxing scheme applicable to racetracks is an "exemption" that has been suspended by the legislature. However, we find the cited statute, applicable to electric cooperatives, to be distinguishable as the language of the statute clearly brings the tax relief granted therein within the definition of "exemption." The statute provides:

Each cooperative shall pay annually, on or before the first day of July, to the department of revenue, a fee of ten dollars for each one hundred persons or fraction thereof to whom electricity is supplied within the state by it, but shall be exempt from all other excise and income taxes whatsoever.
LSA-R.S. 12:425 (emphasis added). No such denomination exists in the Title 4 statutes at issue herein.
[17] The plain language of legislation must be applied as written; it is not the function of this court to judge the wisdom or desirability of legislation. See Lakeside Imports, Inc. v. State, 94-0191, p. 6 (La.7/5/94), 639 So.2d 253, 257; Authement v. Davidson, 366 So.2d 986, 990 (La.App. 1 Cir. 1978). The LDR's attempts to bring racetrack operators within the purview of sales tax law is properly directed to the legislature. See A & P Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260, 1265 (La. App. 1 Cir.), writ denied, 363 So.2d 923 (La. 1978).
[18] Having decided the case on this issue, we find it unnecessary to address Harrah's remaining assignments of error.