KNOLL, J.*
_JjThis writ concerns whether the sales and use tax relief provisions aimed at horse racing facilities constitute “exemptions” or “exclusions” for the purposes of applying a tax suspension provision. Specifically, whether plaintiff, Harrah’s Bossier City Investment Company, LLC (“Har-rah’s”), is excused from payment of sales and use taxes on purchases made for its racetrack and slot machine facility in Bossier City. La.Rev.Stat. §§ 4:168 and 4:227 provide general sales and use tax immunity for purchases made by racetracks and off-track betting parlors (“OTB”). The principal dispute is whether La.Rev.Stat. §§ 4:168 and 4:227 have been legislatively suspended by La.Rev.Stat. § 47:302(Q)-(R), which is dependent upon whether the tax relief provisions qualify as exemptions or exclusions.
12Simply put, we are called on to resolve two issues. First, whether La.Rev.Stat. §§ 4:168 and 4:227 are tax “exemptions” suspended by La.Rev.Stat. § 47:302(Q)-(R), or tax “exclusions,” and therefore unaffected by § 47:302(Q)-(R). Second, if we find the statutes are exclusions, we must determine what purchases are included in that exclusion, i.e., whether they apply only to purchases related to the racetrack and OTB parlors, and/or whether they extend to purchases of goods for the attached slot gaming facility.
For the foregoing reasons, we find §§ 4:168 and 4:227 are exclusions, not exemptions, and therefore remained in full effect during the entire time period at issue. However, we find the tax exclu *442 sions do not extend to purchases made solely for Harrah’s slot gaming facility. We therefore remand to the district court for further proceedings to determine what percentage of Harrah’s expenditures was solely related to the racetrack operation and therefore untaxable; what percentage was solely related to the slot gaming facility and therefore taxable; and what percentage was related to “common areas” of the facility used by both the race track and the slot facility, and therefore requires some apportionment between the two.
FACTS AND RELEVANT PROCEDURAL HISTORY
In late 2002 Harrah’s purchased Louisiana Downs, a racetrack in Bossier City. Harrah’s immediately opened a temporary slot machine facility and hired a contractor to build a permanent facility. It drafted a document naming the contractor an “Agent of Tax Exempt Entity” and authorizing the general contractor to pass the designation on to subcontractors. The contractors made purchases totaling several million dollars without paying any sales or use tax.[1]
IsThe Department of Revenue conducted an audit of Harrah’s operations and determined the slot-related purchases were not tax exempt. The State presented Har-rah’s with a bill for approximately $2.3 million in back taxes from January 2003 through December 31, 2005. Harrah’s paid the amount under protest, and has continued to pay monthly sales and use tax remittances under protest. Harrah’s then filed suit to recover the monies it paid under protest.[2] The State filed a recon-ventional demand seeking judgment against Harrah’s in the amount of all taxes paid under protest, plus attorneys’ fees pursuant to La.Rev.Stat. § 47:1512.
The parties filed cross-motions for partial summary judgment. The State’s motion for partial summary judgment urges “during the entire Audit Period [defined as January 1, 2003 to December 31, 2005] La. R.S. 4:168 was suspended, ineffectual, and null and void.” Harrah’s cross-motion for summary judgment poses the following issue: “Do the provisions of La. R.S. 4:168 and La. R.S. 4:227 apply to purchases made by [Harrah’s] for the improvement and operation of its Racetrack, including purchases related to the slot parlor and to the ‘common areas’ of the Racetrack?” Harrah’s also filed a peremptory exception of prescription.
The trial court granted the State’s motion for partial summary judgment, finding La.Rev.Stat. §§ 4:168 and 4:227 to be “sales tax exemptions that were suspended during the audit period by the Legislature pursuant to La. R.S. 47:302 Q and La. R.S. 47:302 R.” The court pretermitted consideration of Harrah’s cross-motion for summary judgment, and overruled Harrah’s exception of prescription. The |,¡partial judgment was certified as final and immediately appealable under La. Code Civ. Proc. art. 1915(B).
The First Circuit reversed in a split decision. Harrah’s Bossier City Investment Company, LLC v. Bridges, 2008-1727 (La.App. 1 Cir. 7/27/09), 22 So.3d 921. Judge Hughes, writing for the majority, held for Harrah’s in finding “no ambiguity *443 in the language of LSA-R.S. 4:168 and LSA-R.S. 4:227.... These provisions effectively remove the horse racing and offtrack wagering industry from the application of the general sales tax law.” Id. at 931. The majority opinion held §§ 4:168 and 4:227 are neither exemptions nor exclusions; instead, they create a unique taxing scheme solely directed at racetrack operators. Id. at 931-32. Footnote 11 of the court’s decision extended this unique taxing scheme to Harrah’s slot machine operations: “This holding also applies to Harrah’s slot machine casino, opened pursuant to LSA-R.S. 27:351 et seq.”
Judge Guidry concurred in part and dissented in part. Although he agreed La. Rev.Stat. §§ 4:168 and 4:227 were not “exemptions” suspended by La.Rev.Stat. § 47:302(Q)-(R), he would not apply the racetrack’s tax immunity to purchases related to the slot gaming facility. Id. at 933-34.
Judge McDonald dissented: “I believe La. R.S. 4:168 and La. R.S. 4:227 provide for an exemption from the taxes. Once these exemptions were suspended by the Legislature pursuant to La. R.S. 47:302(Q) and (R) the taxes became due.” Id. at 934. Judge McDonald noted the “race track operators would be subject to sales, excise, and occupational taxes just like everyone else were it not for the action of the legislature.” Id. This, he reasoned, created an exemption, which is “a provision which exempts from tax a transaction which would, in the absence of exemption, | Botherwise be subject to tax.” Tarver v. World Ship Supply, Inc., 615 So.2d 423, 426 (La.App. 4 Cir.1993), writ denied, 616 So.2d 672 (La. 1993).
Finding the lower courts’ analysis of the tax relief provisions troubling, we granted the State’s writ application at 2009-1916 (La.11/25/09), 22 So.3d 166.
HISTORICAL DEVELOPMENT OF THE LAW
The primary issue before the Court is whether La.Rev.Stat. §§ 4:168 and 4:227 create tax “exemptions” which have been suspended by La.Rev.Stat. § 47:302(Q)-(R). To put this question in its proper context, we must review the complex historical development of the statutory schemes governing both horse racing and sales and use taxation.
Louisiana law has taken a special interest in horse racing since the Digest of 1808. Although the Digest generally forbade a cause of action for monies won through wagering, a specific exception was carved out for horse racing and other supposedly martial pursuits which the State saw fit to promote:
The law grants no action for the payment of what has been won at gaming or by a bet, except for games tending to promote skill in the use of arms, such as the exercise of the gun, foot, horse and chariot racing.
And as to such games, the judge may reject the demand when the sum appears to him excessive.
This statute, now codified as Civil Code art. 2983, has remained substantively unaltered since 1808.
The legislature occasionally enacted statutes regulating horse races and betting thereon, see, e.g., Acts 1908, no. 57; Acts 1920, no. 127, but it was not until 1940 that an attempt was made to comprehensively regulate the industry as a whole. Act 276 of 1940 created the Louisiana Racing Commission and set forth a statutory framework for the operation of race tracks, gambling parlors, and horse breeding | (--¡facilities. It also imposed a schedule of licensing fees and other charges to be paid by the racetracks, and stated:
*444 The license fees, commissions, and taxes imposed in this chapter shall be in lieu of all license, excise and occupational taxes to the State of Louisiana, or any parish, city, town, or other political subdivision thereof.
Acts 1940, No. 276, § 16.
The original version of what would become La.Rev.Stat. § 4:168 (then numbered § 4:157) excuses racetracks from paying “license, excise, and occupational taxes.” Notably, it does not mention sales taxes, as Louisiana did not charge a state sales tax in 1940.[3] Although temporary sales taxes were imposed beginning in 1942 as an emergency war measure, the first peacetime sales and use taxes were not enacted until 1948. See Acts 1948, No. 9.
In 1968, the Revised Statutes chapter regulating the horse racing industry underwent a total revision and renumbering. The amended (and now-current) version of § 4:168 states:
The license fees, commissions, and taxes imposed in this Part are in lieu of all other such licenses, sales, excise and occupational taxes to the state or to any parish, city, town, or other political subdivision thereof.
The only substantive change effected by the 1968 amendment is the added language expressly making the racetracks immune to sales tax.
17 Over the years numerous special statutes were enacted exempting particular transactions from the sales and use taxes.[4] In 1986 the Legislature, faced with a budget crisis, enacted a “temporary” suspension of all exemptions to the sales and use taxes under La.Rev.Stat. § 47:302. These suspensions have been repeatedly re-enacted and extended, and were in full effect during the relevant time period:
Q. Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period July 1, 2002 through June 30, 2004, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 39:467 and 468, R.S. 47:305(A)(1), (B), (D)(1)(f), <j), (k), (l), (m), (s), and (t), and (G), 305.1, 305.2, 305.3, 305.8, 305.10, 305.14, 305.15, 305.20, 305.25(A)(1) and (2), 305.37, 305.38, 305.46, and 305.50, and R.S. 51:1787, shall be inapplicable, inoperable, and of no effect.
R. (1) Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period July 1, 2004, through June 30, 2009, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 39:467 and 468, R.S. 47:305(A)(1), (B), (D)(1)(f), Q), (k), (l), (m), (s), and (t), and (G), 305.1, 305.2, 305.3, 305.8, 305.10, 305.14, 305.15, 305.20, 305.25(A)(1) and (2), 305.37, 305.38, 305.46, 305.50, and *445 305.51, and R.S. 51:1787, shall be inapplicable, inoperable, and of no effect.
Notably, La.Rev.Stat. § 47:802(Q)-(R) only suspends “exemptions,” not “exclusions.”
In 1987, the legislature granted racetracks permission to operate OTB facilities. Acts 1987, No. 203. In 1990, the racetrack’s sales tax immunity was extended to purchases related to the OTB operations:
|sThe license fees, commissions, and taxes imposed upon an offtrack wagering facility in this Part are in lieu of all other such licenses, sales, excise, and occupational taxes to the state or to any parish, city, town, municipality, or other political subdivision thereof.
La.Rev.Stat. § 4:227.
Despite the added income from the OTB parlors, racetracks continued to face increased competition from other newly legalized forms of gaming including lotteries, riverboat gaming, and land-based casinos. In response, the Legislature passed the Louisiana Pari-Mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act of 1997 in order to “revitalize and rehabilitate” the State’s live horse racing tracks. La.Rev.Stat. § 27:351 et seq. This Act permits racetrack facilities to open a “designated slot machine gaming area” with a set percentage of the slot proceeds earmarked to supporting horse racing and breeding. La.Rev.Stat. § 27:361.[5] Unlike the racetracks and OTB parlors, there is no provision specifically exempting or excluding the slot machine operations from sales and use taxes.
ANALYSIS
I. Standard of Review
On a motion for summary judgment, this Court reviews the record de novo to determine whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966; Louisiana Safety Association of Timbermen Self Insurers Fund v. Louisiana Insurance Guaranty Association, 2009-0023, p. 5 (La.6/26/09), 17 So.3d 350, 353.
RHere, the parties’ cross-motions for partial summary judgment present no material issue of disputed fact. The disputed issue in this case is one of statutory interpretation, which is subject to de novo review. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582, p. 9 (La.11/29/06), 943 So.2d 1037,1045.
II. The Distinction Between Exclusions and Exemptions
As cogently explained by Judge McDonald in his dissent below, the “real issue in this case is whether the applicable statutes provide for an exemption or an exclusion. If an exemption, then the taxes are due; if an exclusion, they are not.” Harrah’s, 22 So.3d at 934 (McDonald, J., dissenting).[6] Although the question may be *446 simply stated, the answer is not simply derived.
Unfortunately, the Legislature has not provided a statutory definition of either an “exemption” or an “exclusion.”[7] According to the leading Louisiana sales tax | intreatise, a “tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction that is clearly within the ambit and authority of the taxing statutes to tax.” Bruce J. Oreck, Louisiana Sales & Use Taxation (2d ed.1996), § 3.1. An exclusion, on the other hand, “relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax, ab initio. Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax.” Id. Oreck’s definitions have been widely adopted by Louisiana courts.[8]
There are also two seemingly contradictory jurisprudential maxims at play. Tax exemptions are strictly construed in favor of the State and “must be clearly and unequivocally and affirmatively established” by the taxpayer. Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193, 1197 (La.1982). Exclusions, on the other hand, are “construed liberally in favor of the taxpayers and against the taxing authority.” Wyesco of Louisiana, LLC v. East Feliciana Parish School Board, 2000-1322, p. 5 (LaApp. 1 Cir. 9/28/01), 809 So.2d 401, 404, citing Tarver v. World Ship Supply, Inc., 615 So.2d 423, 426 (La. App. 4 Cir.1993), writ denied, 616 So.2d 672 (La.1993). In this case, however, both maxims favor Harrah’s, who argues §§ 4:168 and 4:227 are not exemptions, but exclusions.
In III. Classification of La.Rev.Stat. §§ 4:168 and 4:227
It is a fundamental principle of statutory interpretation that when a “law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further *447 interpretation may be made in search of the intent of the legislature.” La. Civ. Code art. 9. However, the statutory scheme at issue in this ease is neither clear nor unambiguous.[9] Had the legislature specified whether §§ 4:168 and 4:227 created exemptions or exclusions, our analysis would be simple. It did not, and we are forced to rely on secondary rules of statutory interpretation to discern the meaning of this complex statutory scheme.
This Court is the “ultimate arbiter of the meaning of the laws of this state.” Louisiana Municipal Association v. State, 2004-0227 (La.1/19/05), 893 So.2d 809, 836. However, we do not make the law, and our fundamental duty is to give effect to the legislature’s intent in passing a statute. Detillier v. Kenner Regional Medical Center, 2003-3259, p. 35 (La.7/6/04), 877 So.2d 100, 103. “As the fundamental question in all cases of statutory interpretation is legislative intent, the rules of statutory construction are designed to ascertain and enforce the intent of the Legislature.” Black v. St. Tammany Parish Hospital, 2008-2670 (La.11/6/09) 25 So.3d 711. “A statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intent of the Legislature in enacting it.” Id. The principal rule is the “text of a statute is considered the best evidence of legislative intent or will.” State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, 800, citing Norman J. Singer, Statutory Construction (6th ed.2000) § 46:03.
|12It is strong evidence of the Legislature’s underlying intent that its various Acts have consistently expressed a desire to support and promote the horse racing and breeding industries, and to ensure the ongoing financial solvency of the racetracks. Indeed, this is expressly designated as the “public policy of this state.” See La.Rev.Stat. § 4:141 (“It is the policy of the state of Louisiana [to] encourage and permit development of the business of horse racing with pari-mutuel wagering thereon [and] development of the breeding and ownership of race horses in the state.”); La.Rev.Stat. § 27:352 (“The legislature hereby finds and declares it to be the public policy of this state that: Parimutuel wagering facilities which offer live horse racing have historically made great contributions to the economic development of the state at large and particularly the agricultural and horse breeding industries.”)
A. Statutory Analysis of §§ ⅛:168 And p.227
With this background in mind, we consider the operative language of La.Rev. Stat. § 4:168:[10]
The license fees, commissions, and taxes imposed in this Part are in lieu of all other such licenses, sales, excise and occupational taxes to the state or to any parish, city, town, or other political subdivision thereof.
By imposing certain license fees, commissions, and taxes “in lieu of’ Louisiana’s standard sales and use tax scheme, the Legislature effectively removed purchases made by the racetracks and OTB parlors from the ambit of the tax statutes. “Exclusionary provisions serve to designate those goods and transactions that fall out *448 side the perimeter of state or local authority to levy a tax. All that falls outside 11sthat boundary is not subject to tax because no tax statute is applicable.” Bruce J. Oreck, Louisiana Sales & Use Taxation (2d ed.1996), § 3.1. The racetracks are required to pay certain licence fees, commissions and taxes imposed by the Racing Commission, but their purchases are simply outside the boundary of the sales and use tax statutes. Thus, this exclusion is unaffected by the passage of La.Rev.Stat. § 47:302(Q) and (R), which only apply to exemptions.
An exclusion removes a certain transaction from the scope of the tax, ab initio. Ferrara v. Secretary, Department of Revenue and Taxation, 96-806 (La.App. 5 Cir. 1/28/97), 688 So.2d 147, 149, writ denied, 692 So.2d 418; Kerr-McGee Corp. v. McNamara, 2000-0770 (La.App. 1 Cir. 6/22/01), 826 So.2d 1, 7. Racetracks have been excluded from all “excise taxes” (which include sales taxes) since 1940, eight years prior to enactment of this State’s first sales tax law. Racetracks have therefore been outside the scope of the sales tax law since before there was a sales tax-an ab initio exclusion in its most literal sense.
This conclusion is buttressed by the enactment of the very statute that authorized favorable tax treatment for OTB parlors, La.Rev.Stat. § 4:227, in 1990, four years after the Legislature suspended the vast majority of tax exemptions. We assume that, in granting OTB parlors relief from sales and use taxes, the legislature knew sales and use tax exemptions had been suspended. “The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter.” Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582, p. 9 (La.11/29/06), 948 So.2d 1037, 1045. If § 4:227 created an exemption rather than an exclusion, it would have been suspended and therefore ineffective from the very moment it was enacted.
114This interpretation would conflict with the settled rule of statutory interpretation that “every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed.” Colvin v. Louisiana Patient’s Compensation Fund Oversight Board, 06-1104, p. 6 (La.1/17/07), 947 So.2d 15, 19. Courts “are bound to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found.” Id. at 19-20. To adopt the State’s proposed interpretation would render § 4:227 “meaningless” and “surplus-age” from the very moment it was enacted. We cannot assume the Legislature intended to pass a toothless statute.
B. The Tax Exemption Budgets
Each year, the Department of Revenue drafts a “Tax Exemption Budget” pursuant to La.Rev.Stat. § 47:1517 and disseminates it to the governor and Legislature. The purpose of the Tax Exemption Budget is to inform the legislature of the “revenue loss to the state caused by each tax exemption for the three preceding years, the estimated revenue loss to the state caused by each tax exemption for the current fiscal year, and the estimated revenue loss to the state caused by each tax exemption for the ensuing fiscal year.” La.Rev.Stat. § 47:1517(B)(2). Tax Exemption Budgets have been submitted to the Legislature each year since 1986, and they have consistently shown racetracks pay a 0% sales tax rate and OTB parlors pay 115a 1% sales tax *449 rate.[11] The Tax Exemption Budgets refer to La.Rev.Stat. §§ 4:168 and 4:227 as “exclusions,” not “exemptions.”
Harrah’s urges we rely on the Tax Exemption Budgets as an administrative construction of the law. Although courts may give due consideration to the administrative construction of a law, we are certainly not bound by them. Jurisich v. Jenkins, 1999-0076, p. 8 (La.10/19/99), 749 So.2d 597, 602. Moreover, La.Rev.Stat. § 47:1517 expressly says Tax Exemption Budgets are prepared for the use of the legislature and governor. They are not intended for use by individual taxpayers as are private letter rulings. However, the Tax Exemption Budgets are relevant to show the Legislature has long been aware of the favorable tax treatment provided to racetracks, but did not repeal those provisions. If the Legislature believed the Tax Exemption Budgets were in error, we assume it would have acted by now. As mentioned earlier, the Legislature’s enactment of § 4:227 evidenced an intent to extend the racetracks’ favorable tax treatment.[12]
The State cites to Traigle v. Fairgrounds Corp., 288 So.2d 409 (La.App. 4 Cir.1974), and Ford New Holland, Inc. v. City of Bossier City, 36,544 (LaApp. 2 Cir. 12/11/02), 835 So.2d 862, both of which refer to La.Rev.Stat. § 4:168 as an “exemption.” These cases are simply not on point, as the issue of whether § 4:168 |1ficreated an “exemption” or an “exclusion” was not raised in either case, and any reference to the statute as an “exemption” was pure dicta.
In Traigle, the court held the Fairgrounds is not required to pay sales taxes on purchases it makes from vendors, but it is required to charge sales tax on goods it sells to its customers. Traigle, 288 So.2d at 410. In Ford New Holland, the court was called on to determine whether a party could avoid paying sales and use tax on its purchase of tractors if those tractors were later leased to Louisiana Downs. Ford New Holland, 835 So.2d at 862. In both cases, the reference to § 4:168 as an exemption was simply irrelevant to the court’s holding.
The State also relies on this Court’s recent decision in World Trade Center Taxing District v. All Taxpayers, 2005-0374 (La.6/29/05), 908 So.2d 623. There, the dispute involved a statute imposing a special hotel occupancy tax specific to the World Trade Center “in lieu of’ the generally applicable Orleans Parish hotel occupancy taxes. Id. at 633, quoting La.Rev. Stat. § 33:9038.21 F(4). The State points out we held the statute created a tax “exemption,” not a “suspension,” and reasons that all statutes containing the “in lieu of’ language (including §§ 4:168 and 4:227) must also be exemptions. This argument is flawed.
First, in World Trade Center this Court was called upon to decide whether the statute created an exemption or a suspension. Id. at 633-34. It contains no discussion of the distinction between an *450 exemption and an exclusion, as the question was neither briefed nor argued and made no part of the decision. A case does not create precedent for a proposition that was not argued by the parties and did not make part of the court’s ratio decidendi. The Constitutional provision at the heart of World Trade \ ^Center, La. Const. Art. VI, § 29, refers equally to “exemptions or exclusions.”[13] For the purposes of this provision, there was no meaningful distinction between an exemption and an exclusion, and there was no need for this Court to decide which term best described La. Rev.Stat. § 33:9038.21 F(4).
Moreover, the State’s argument that World Trade Center controls because it interpreted a statute containing the same “in lieu of’ language as La.Rev. Stat. §§ 4:168 and 4:227 is simply not convincing. It would be highly inappropriate to focus on a single phrase to determine whether a statute creates an exclusion or an exemption. There are no “magic words” necessary to create an exemption or an exclusion; the determining factor is the effect of the statute: “the words and form used legislatively in granting an exemption are not important if, in their essence, the Legislature creates an exemption.” Wooden v. Louisiana Tax Commission, 94-2481 (La.2/20/95), 650 So.2d 1157, 1161, citing Meyers v. Flournoy, 209 La. 812, 25 So.2d 601 (1946). Having found the relevant statutes are exclusionary, we now turn to the reach of the exclusion.
IV. Scope of Exclusion
| ]SThe secondary issue concerns the scope of the exclusions set forth in La.Rev. Stat. §§ 4:168 and 4:227; specifically, whether those statutes encompass purchases related to Harrah’s slot machine gaming area.
Preliminary, the State urges this issue, which was raised in Harrah’s cross-motion for summary judgment, is not properly before this Court. The district court granted the State’s motion for summary judgment and therefore pretermitted ruling on Harrah’s cross-motion. The Court of Appeal, in a footnote and without any meaningful analysis, took up the question and found slot-related purchases within the ambit of the exclusion:
This holding also applies to Harrah’s slot machine casino, opened pursuant to LSA-R.S. 27:351 et seq., the “Louisiana Pari-mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act,” which was enacted specifically to authorize slot machine gaming at eligible live horse racing facilities. See LSA-R.S. 27:353. See also LSA-R.S. 33:9561.
Harrah’s, 22 So.3d at 931 n. 11.
According to the State, only those issues considered and ruled upon by the district court are appropriate for appellate review, and the appellate court erred in even considering the issue. The State cites Ayers *451 v. Brazzell, 26,068, pp. 7-8 (La.App. 2 Cir. 9/21/94), 648 So.2d 406, 410, overruled on other grounds, Jacobs v. City of Bunkie, 98-2510 (La.5/18/99), 737 So.2d 14: “After our examination of the record, we find that the plaintiffs properly raised this [constitutional] issue in the trial court, but a ruling on the issue was pretermitted. Without a trial court ruling, it would be improper for this court, in the first instance, to consider the issue.” In Ayers the pretermitted issue was a challenge to the constitutionality of a statute. La.Rev.Stat. § 13:4448 requires an appellate court to give notice to the Attorney General prior to adjudicating the constitutionality of any Louisiana statute. As the Attorney General |19had not been notified and given an opportunity to be heard, the court rightly withheld ruling on the statute’s constitutionality. Notably, later cases have cited Ayers only as standing for the specific concept that “an attack on the constitutionality of a statute must first be raised in the trial court.” Koeppen v. Raz, 29,880, p. 5 (La.App. 2 Cir. 10/29/97), 702 So.2d 337, 340; Joseph v. Hospital Service District No. 2, 2001-1951 (La.App. 1 Cir. 12/28/01), 805 So.2d 400, 413. The parties’ cross-motions for summary judgment present no constitutional issues, and the rationale of Ayers simply does not apply.
The State also cites Fields v. State, 98-0611 (La.7/8/98), 714 So.2d 1244, in which we remanded plaintiffs’ due process claim because it “was not addressed by the trial court nor was it sufficiently briefed or presented to this court for us to make a determination.” Id. at 1249. Certainly this Court has discretion to defer ruling on an issue which has not been raised, argued, and briefed. However, we find the scope of the tax exclusion has been properly raised and sufficiently briefed, and it is in the best interests of judicial efficiency to address it here.
The question presented by Har-rah’s motion for partial summary judgment is: “Do the provisions of La.Rev. Stat. §§ 4:168 and 4:227 apply to purchases made by [Harrah’s] for the improvement and operation of its Racetrack, including purchases related to the slot parlor and to the ‘common areas’ of the Racetrack?” (Emphasis added). Har-rah’s motion urges “that all areas of the Racetrack are important to the continued survival of horse racing in the State and that there is a single facility. [Harrah’s] operates the slot parlor and the common areas as component parts of one single horse racing facility.”
Of interest, we note this question has been addressed by the Third Circuit in Boyd Racing, LLC v. Fruge, 2008-581 (La.App. 3 Cir. 11/5/08), 996 So.2d 659, writ 12fídenied, 999 So.2d 780. Boyd Racing operates Delta Downs in Calcasieu Parish, which opened a slot machine casino in February 2002. Boyd Racing argued La.Rev.Stat. § 4:168 excused it from paying sales or use taxes on the “material it purchased in conjunction with the renovation of its premises and construction and furnishing of the slots casino, restaurants, stores, and hotel.” Id. at 661. The district court granted the motion for summary judgment filed by the State and Cal-casieu Parish, and held § 4:168 inapplicable to slots-related purchases. The court of appeal affirmed.
By its own terms, La. R.S. 4:168 creates a trade-off for horse racing facilities. In exchange for the payment of the taxes and fees imposed for its horse racing activities, the facilities do not have to pay state and local use taxes. In this respect, we find the language of the statute determinative of the issue before us. The statute specifically says that the fees “imposed in this Part are in *452 lieu of’ State and local sales and use taxes.
The statute allowing the horse racing facilities to operate slot machine casinos appears in Title 27. In furtherance of the legislation’s stated goals of furthering the horse breeding industry, the statute does provide for significant contributions to the purses for horse races and to horsemen’s groups from the net proceeds of the slot machine casino. But Title 27 contains no trade-off provision similar to La. R.S. 4:168. The Act did not create any new burdens for Boyd Racing under Title 4, Chapter 4, Part I. As such, we find that La. R.S. 4:168 does not apply to excuse Boyd Racing from paying sales and use taxes associated with the operation of a slot machine casino authorized under Revised Statutes Title 27.
Id. at 663.
The court likewise rejected the claim that the horse racing facility and slot facility were one single entity, and “La. R.S. 4:168 should be read to offset all purchases made by Boyd Racing, whether they are racing related or not, because without the racing facility there would be no non-racing purchases.” Id. at 663. The court held the legislature had enacted a comprehensive set of regulations and fees for | ai operation of a slot casino, yet in “defining those taxes and fees, the legislature did not create an offset similar to La. R.S. 4:168, and we will not create one.” Id. at 664.
We agree with the appellate reasoning in Boyd Racing. When the Legislature originally passed the act that would later become § 4:168, the sole purpose and effect was to benefit the horse racing and breeding industry at live horse racing tracks. Significantly, when the legislature permitted racetracks to operate OTB parlors in 1987, it enacted § 4:227 to extend the benefits of the tax exclusion scheme to OTB parlors as well as racetracks. We cannot presume the Legislature would have passed a meaningless or redundant law. It therefore stands to reason that, if not for the passage of § 4:227, the tax exclusion in § 4:168 would not have extended to OTB parlors. “In construing legislative enactments, we must assume that the Legislature intended every word, phrase, and clause to have some meaning and that none was inserted by accident ... Consequently, we will construe every provision of a statute in such a manner so as to give it some effect.” Elevating Boats, Inc. v. St. Bernard Parish, 2000-3518 (La.9/5/01), 795 So.2d 1153,1166.
As noted in Boyd Racing, the Louisiana Pari-Mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act of 1997 contains a comprehensive list of regulations and fees regarding the racetrack’s operation of slot machine parlors. The Legislature could have expressly extended the racetrack’s tax exclusion to the slot machine parlor, but did not. We must assume this omission was intentional, and it is not the function of this Court to extend preferential tax treatment in the absence of a specific mandate from the Legislature.
A review of the legislative history reflects that the originally proposed version of the Louisiana Pari-Mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act of 1997 contained a specific tax exemption for slot machines:
122§ 371. Preemption of local laws and taxes
Slot machines, the operation of which are licensed pursuant to this Chapter, are exempt from taxes, fees, and licensing restrictions imposed by any governmental entity.
*453 Senate Bill 1295, Regular Session 1997, Original Version.
This proposed section was removed entirely prior to the bill’s enactment. The Legislature considered exempting purchases of slot machines from sales and use taxation, but decided not to. This is strong evidence of a clear legislative intent that the slot gaming facilities would be subject to tax.
Harrah’s argues “Sections 168 and 227 apply to all sales taxes, and thus to all purchases of a Title 4 Licensee.” (Emphasis in original). We find this contention is simply untenable. Taken to its logical end, it would permit Harrah’s to operate any kind of a business — a grocery, a fashion boutique, a home improvement supply store — and avoid sales and use taxes on purchases made for each of those businesses. It is the clearly expressed intent of the legislature to encourage the “business of horse raeing” and the “breeding and ownership of race horses in the State.” La.Rev.Stat. § 4:141(A)(l)-(2). We find the Legislature did not intend to give Har-rah’s carte blanche to avoid sales and use taxes on anything it buys for any purpose. The exclusion only applies to purchases related to the racetrack or to the OTB parlors.
This principle is amply demonstrated in Traigle v. Fairgrounds Corp., 288 So.2d 409 (La.App. 4 Cir.1974). In Traigle, the Fairgrounds refused to collect sales taxes from patrons for purchases of items such as food, programs, and parking. Id. at 410. The Fourth Circuit held, although § 4:168 shielded the Fairgrounds from paying sales taxes on items it bought for its own use, it did cover “those items which were sold on a retail basis to the patrons of the race track.” Id. at 410. Although Traigle is not directly on point with the instant case, it affirms the basic proposition kqthat there is no wholesale exclusion of all sales taxes simply because one of the parties to the transaction happens to be a racetrack.
In the alternative, Harrah’s argues its racing and slot gaming operations are “inextricably intertwined” because they are owned by one corporation in one facility, and there is significant “regulatory overlap” between the two operations. This argument, while more plausible than Har-rah’s previous claim, still must fail. Horse races and slot machines have very little in common other than they are both forms of gaming. Although there is some regulatory overlap, it is not so substantial as to make the two operations “inextricably intertwined.” It is abundantly clear one can operate a racetrack without a slot facility, or a slot facility without an attached racetrack. Slots are permitted not only at horse tracks but at riverboat casinos and a land-based casino (operated by one of Har-rah’s sister companies), and it is well settled that the casinos’ purchases of slot machines are subject to sales tax. Showboat Star Partnership v. Slaughter, 2000-1227 (La.4/3/01), 789 So.2d 554. Harrah's points to no compelling reason why slot machines it buys to install at a racetrack, are excluded from sales tax, while the slot machines it buys at a casino are not. If Harrah’s believes this should be the law, its requests must be directed at the Legislature, not at this Court.
What of the purchases made for the Bossier facility’s “common areas,” such as the parking lot and the restaurant, which may be used by either racetrack patrons or by slot patrons? The record on this issue is scanty, and insufficient for resolution on summary judgment. On remand the trial court will be required to make factual findings regarding the proper apportionment of those expenditures. Any portion of the “common area” expenditures more closely related to the track will not *454 be taxable; any portion more closely related to the slot machine area will be taxable.
J24V. Harrah’s Prescription Claim
Finally, Harrah’s urges the district court erred in denying its exception of prescription. We find no error in the court’s ruling. Prescription was suspended as soon as Harrah’s filed suit: “The prescription running against any state tax, license, excise, interest, penalty, or other charge shall be suspended by.... The filing of any pleading, either by the secretary or by a taxpayer, with the board of tax appeals or any state or federal court.” La.Rev.Stat. § 47:1580. The State recon-ventional demand was therefore timely.
CONCLUSION
To recap, we present three central holdings. First, La.Rev.Stat. §§ 4:168 and 4:227 create exclusions, not exemptions, and are not affected by the legislative suspension of tax exemptions set forth in La. Rev.Stat. § 47:302(Q)-(R). Second, the scope of those exclusions has been carefully limited by the Legislature, and Harrah’s is not entitled to a sales or use tax exclusion for purchases related to the slot gaming facility. Third, Harrah’s exception of prescription is without merit.
Because the record before us is necessarily limited by the procedural posture of a motion for partial summary judgment, this opinion does not dispose of all the issues in this case. We therefore remand this case to the district court for further proceedings.
DECREE
For the foregoing reasons, the court of appeal’s grant of partial summary judgment in favor of Harrah’s is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings consistent with this opinion.
| ..AFFIRMED IN PART AND REVERSED IN PART AND REMANDED TO DISTRICT COURT.

 Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. Because of the limited scope of issues in the parties' cross-motions for summary judgment, whether Harrah's has the authority to pass on its status as a "Tax Exempt Entity" to its mandataries and submandataries is not currently before this Court.

. Indeed, every month as Harrah's submits its sales tax payment, it files a new lawsuit. These numerous lawsuits have been consolidated.

. However, had sales taxes existed at the time, they would arguably have been covered by the 1940 Act’s reference to “excise tax," which is a "tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee).” Black’s Law Dictionary 605 (8th ed.2004). See Bridges v. Production Operators, Inc., 2007-0648, p. 6 (La.App. 4 Cir. 12/12/07), 974 So.2d 54, 58 ("The Louisiana sales and use tax is an excise tax.”)

. See, e.g., La.Rev.Stat. § 47:305(D)(l)(j)(ex-empting purchases of drugs prescribed by a physician or dentist); La.Rev.Stat. § 47:302.l(exempting leases or rentals of helicopters used in petroleum exploration or extraction); La.Rev.Stat. § 47:305.40 (exempting certain purchases of "Mardi Gras specialty items.”)

. The facility must pay fifteen percent of the annual net slot machine proceeds to supplement purses for thoroughbred and quarter horse races: two percent of the net slot machine proceeds to the Executive Committee of the Louisiana Thoroughbred Breeders' Association; and one percent of the net slot machine proceeds to the Executive Committee of the Louisiana Quarter Horse Breeders' Association. La.Rev.Stat. § 27:361(B).

. The majority opinion below adopted a third option, which Harrah’s urges before this Court: La.Rev.Stat. §§ 4:168 and 4:227 create a sui generis taxation scheme for racetracks, separate and apart from the generally applicable sales tax statutes, neither an exclusion nor an exemption. We disagree. While racetracks certainly occupy a unique position in Louisiana's sales tax scheme, it would be unnecessary and potentially confusing to *446 adopt an entirely new category of tax relief statute solely for the purposes of this case.
A Louisiana sales tax treatise suggests yet another possibility: the “in lieu of” language creates a "credit mechanism” allowing the tracks to offset any license fees, commissions, or taxes paid to the Racing Commission against any fees or taxes that would otherwise be due. Bruce J. Oreck, Louisiana Sales & Use Taxation (2d ed.1996), § 9.4 n. 42. However, neither party raises this argument, and we do not address it here.

. The State points to La.Rev.Stat. § 47:1517, which requires the Department of Revenue to submit a yearly "Tax Exemption Budget” to the governor and legislature. This statute broadly defines "tax exemption” as "those revenue losses attributable to provisions of the state tax statutes or rules promulgated pursuant to such statutes, which allow a special exclusion, exemption, or deduction from gross income or sales or which provide a special credit, a preferential rate of tax, or a deferral of tax liability.” La.Rev.Stat. § 47:1517(E).
The State urges us to adopt this broad definition, which includes both exemptions and exclusions under the umbrella term "exemption.” The definition of "exemption" in § 47:1517(E) only applies to the preparation of the Tax Exemption Budget, which is intended to provide a comprehensive list of all exemptions, exclusions, credits, and other forms of tax relief so the Legislature can determine the fiscal effect of those tax relief provisions.

. See World Trade Center Taxing District v. All Taxpayers, 2005-0374 (La.6/29/05), 908 So.2d 623, 634; Tarver v. World Ship Supply, Inc., 615 So.2d 423, 426 (La.App. 4 Cir.1993), writ denied, 616 So.2d 672 (La.1993); Ferrara v. Secretary, Department of Revenue and Taxation, 96-806 (La.App. 5 Cir. 1/28/97), 688 So.2d 147, 149, writ denied, 692 So.2d 418; Kerr-McGee Corp. v. McNamara, 2000-0770 (La.App. 1 Cir. 6/22/01), 826 So.2d 1, 7.

. Our task is made more difficult because La.Rev.Stat. § 47:302(Q)-(R) do not list those exemptions which are suspended, but instead list those exemptions which are not suspended.

. La.Rev.Stat. § 4:227 contains the same operative language and has the same effect as § 4:168. For the purposes of this discussion the two statutes are indistinguishable.

. The parties do not explain why OTB parlors apparently pay this 1% rate. As the question is not before us, we do not decide whether the OTB parlors actually owe a 1% sales tax or whether their tax rate should also be 0%.

. The Legislature made one attempt to repeal La.Rev.Stat. § 4:168 by passing Acts 1989, 1st Ex.Sess., No. 3. That Act constituted a significant amendment and recodification of almost all Louisiana taxation statutes, and Section 2 of the Act would have expressly repealed § 4:168. However, because the Act proposed an amendment to the State Constitution, it was subject to ratification by the electorate. The proposed Constitutional amendment failed.

. La. Const. Art. VI, § 29 states in its entirety:
Exemptions; Protection of Bonds. Except when bonds secured thereby have been authorized, the legislature may provide for the exemption or exclusion of any goods, tangible personal property, or services from sales or use taxes only pursuant to one of the following:
(1)Exemptions or exclusions uniformly applicable to the taxes of all local governmental subdivisions, school boards, and other political subdivisions whose boundaries are not coterminous with those of the state.
(2) Exemptions or exclusions applicable to the taxes of the state or applicable to political subdivisions whose boundaries are coterminous with those of the state, or both.
(3) Exemptions or exclusions uniformly applicable to the taxes of all the tax authorities in the state.